STONE COMPANY v. McLAMB & COMPANY, A. D. RICH et al.

(Filed 10 November, 1910.)

1. Partnership — Feme Covert — Husband and Wife — Managing Agent—Free-trader—Liability.

A married woman being a member of a firm, with another, under the name and style of M. & Co., her husband acting as general manager and agent, without posting a sign displaying her Christian name or stating the fact that she was a married woman, subjects all the firm's property to the payment of the firm's debts, whether the person dealing with the firm was aware of her being a *feme* covert or not; for she "shall for all purposes be deemed and treated as to all debts contracted by the firm as a free-trader," etc. Revisal, sec. 2118.

2. Partnership—Managing Agent—Mortgages—Partnership Acts— Feme Covert—Execution—Liability.

One partner may execute a valid mortgage on the partnership property to secure a partnership debt; and when the general manager of a firm composed of a *feme* covert and another executes such mortgage and has it registered, and its execution and registration are admitted by the other partner as a partnership mortgage, it will be binding upon the partnership property, whether its execution on the part of the *feme* covert was formally and correctly proven or not.

3. Mortgages — Judgment Creditors—Junior Liens—Receivership—
   Equity.

   The mortgagee of partnership assets had them delivered to him
   by the mortgagor firm for the purpose of foreclosure, but at the
   sale a deputy sheriff announced that the plaintiff, a judgment
   creditor, had a lien thereon and that the sale should not be made.
   The assets were worth about $2,000, the mortgage note amounted
   to $1,585, and the property brought $1,450. No sale was made
   and the mortgagee put a new lock on the door, and by locking it
   retained the possession of the goods. The mortgagor, without his
   knowledge, broke into the store and sold and continued to sell the
   goods until restrained by plaintiff's action and injunction. *Held*,
   it was error in the lower court at the suit of one holding a junior
   judgment to appoint a receiver of the partnership, and seize the
   property, deprive the mortgagee of his right of foreclosure given
   him by his contract and entail upon the fund the cost of litiga-
   tion, threatening to some extent the sufficiency of the security, in
   the absence of any allegation or suggestion of insolvency or mis-
   management, or bad faith on the part of the mortgagee or any
   other recognized ground of equitable interference.

4. Same—Mortgagor—Wrongful Seizure.

   In this case the rights of the mortgagee are not affected by the
   facts that the mortgagor tortiously broke into the store and
   resumed possession of the property and proceeded to sell it, such
   fact not being known by or assented to by the mortgagee; and
   the act of the mortgagor being tortious, will not be allowed to
   avoid or injuriously affect the legal rights of the parties.

APPEAL from *Whedbee, J.,* at the August Term, 1910, of
SAMPSON.

Civil action heard on motion to make permanent a prelimi-
nary order appointing a receiver of the property of McLamb
& Co. On the admissions and facts in evidence his Honor en-
tered judgment confirming the appointment of receiver and
making provision for realizing on the assets of the firm, proof
of claims, etc.

The defendant A. D. Rich, a creditor and claimant under a
mortgage, excepted and appealed.

*H. A. Grady* for plaintiff.
*Faison & Wright* for defendant, appellant.

HOKE, J.. It appeared that McLamb & Co. was a partner-
ship, doing a mercantile business, composed of Walter McLamb

and M. M. Vann, a *feme* covert, the business being conducted by C. T. Vann, husband of M. M. Vann, as agent and general manager, and that no sign was posted containing a notice that M. M. Vann was a married woman or disclosing her Christian name as required by the statute; that plaintiff company had sold the defendant firm goods, and on 23 July, 1910, had recovered judgment against it for the amount, to-wit, $134.98, from which M. M. Vann had prayed an appeal; that on 27 July this appeal was withdrawn, and the firm, through C. T. Vann, as agent and general manager, in the firm's name, executed a mortgage on the stock of goods to secure the amount of the judgment; that defendant, appellant, A. D. Rich, was a creditor of defendant firm to the amount of $1,585.06 with some interest, evidenced by notes falling due at different times, one for $650 due 1 June, 1910, one due in August, 1910, and the third due in October, 1910, the consideration being for money advanced and goods supplied to enable defendant firm to commence business, and to secure said indebtedness said Rich held a prior mortgage on the entire stock of goods, notes, accounts and other assets of defendant firm, containing the provision that if default be made in the payment of said notes or either of them, the said A. D. Rich is authorized to take possession of the property, and after due advertisement sell the same, etc.

The mortgage purports to be executed by McLamb & Co. and its proper execution, probate and registration are admitted on the part of Chas. McLamb, but is alleged to be void as to M. M. Vann, the *feme* covert, partly on the ground that she is *feme* covert and on the further ground that as to her, there is a defective probate, in that professing to be signed by her it was as a matter of fact both signed and acknowledged for her by her husband, C. T. Vann, general manager. It was further shown that default having been made in the payment of the first note, D. A. Rich was proceeding to foreclose his mortgage and had advertised a sale to take place on 25 July, 1910, and the mortgagors turned over possession of the property embraced in the mortgage to Isaac Wright, Esq., as attorney and agent of the mortgagee, who offered the goods for sale on the premises and was compelled to bid them in for the mortgagee at the price of $1,450, and rec-

ognizing this as no valid foreclosure, said I. C. Wright locked
up the goods, taking the keys and holding possession of same for
the mortgagee.    That after Wright left, having failed to make
a valid sale, owing in part no doubt to the fact that a deputy
sheriff of the county holding an execution on plaintiff's judg-
ment, announced that no valid sale of the goods should be made,
the mortgagors broke into the store and resumed possession of
the goods, and on the 27th of July, 1910, executed a second
mortgage on the stock in adjustment of plaintiff's debt, payable
in 60 days, which was duly registered, and thereupon plaintiff
on 28 July instituted the present action to seize the goods and
have same sold and proceeds distributed by a receiver under the
order of the court.

The facts with reference to the chattel mortgage and of the
resumption of possession by the mortgagor and the attendant
circumstances are set forth by the judge in his findings as fol-
lows:   "That prior to the institution of this action, and after
the rendition of said justice's judgment, McLamb & Co., through
their agent and general manager, C. T. Vann, executed to the
plaintiff a chattel mortgage upon their entire stock of goods, etc.,
to secure the payment of the amount due, to-wit, $136.85. Said
chattel mortgage is made a part of this finding of fact, "That
on 25 July, 1910, the defendants, Mrs. M. M. Vann, C. T. Vann
and Walter McLamb, voluntarily surrendered possession of the
goods and all the property of the McLamb Company to I. C.
Wright, attorney for A. D. Rich, for said Rich mortgagee, un-
der his mortgage above set out, and that I. C. Wright has the
keys of said store now.    That after the possession of said goods
and property was surrendered to I. C. Wright, attorney for A.
D. Rich, the Stone Company had execution issued on its judg-
ment, which was returned "indulged by the plaintiff," when the
chattel mortgage, referred to in the fifth finding of fact, was
executed, and C. T. Vann thereupon, through D. C. McPhail,
demanded of I. C. Wright the keys to said store, which demand
was refused by said Wright; and thereupon C. T. Vann broke
into said store, put on a new lock, and began selling goods,
which state of facts continued without the knowledge of I. C.
Wright or A. D. Rich until the receiver took charge under the

order of this Court; "That the defendant, A. D. Rich, is undertaking to sell goods under his chattel mortgage."

There is no allegation or evidence tending to show that A. D. Rich is insolvent or that he will in any way fail to account for the goods or their value except as predicated on the claim that his mortgage is a valid lien against the partnership property notwithstanding the coverture of Mrs. Vann and notwithstanding the alleged defect in the probate as to her interest.

Upon these the controlling facts relevant to the question presented, the Court is of opinion that the order for a receiver should have been set aside and the goods restored to the mortgagee, A. D. Rich. The *feme* covert having entered into the copartnership of McLamb & Co., the firm composed of herself and Walter McLamb, and the business being conducted by her husband, C. T. Vann, as general manager and agent, and no sign having been posted displaying her Christian name or stating the fact that she was *feme* covert, her case comes directly within the provisions of our statute, Revisal, 2118, and all the property embarked in the enterprise is subject to the debts of the firm and the *feme* covert herself "shall for all purposes be deemed and treated as to all debts contracted in the course of such business as a freetrader as fully as if she had complied with the provisions of this sub-chapter, etc.," and this whether a person dealing with the firm was aware of her being *feme* covert or not. *Scott v. Ferguson,* 152 N. C., p. 348.

This being the position of Mrs. Vann in reference to the property of the firm and its obligations, she is to the extent indicated liable on the claims both of plaintiff and defendant Rich, and the mortgage held by said defendant is a valid and binding lien on the property of the firm, whether its execution on the part of Mrs. Vann was formally and correctly proven or not. This mortgage on all "fixtures, goods, wares and merchandise and also all the notes, accounts," etc., of the firm, purports to be executed by McLamb & Co. and its proper execution and registration on the part of Walter Lamb, the other member of the firm, is admitted, and it is doctrine well recognized that one partner may in the name of the firm execute a valid mortgage on partner-

ship property to secure a partnership debt. *Odom v. Clark,* 146
N. C., p. 550; *Pipe Co. v. Woltman,* 114 N. C., p. 185; 30 Cyc.,
p. 496.

We have it then that defendant A. D. Rich held a valid mort-
gage, with power of sale on the assets of the firm, alleged in the
complaint to be worth $2,000, and which brought at the sale only
$1,450, to secure a debt of $1,585 dollars for cash advanced and
goods furnished to enable the firm to commence business, and
that the goods had been voluntarily surrendered to him by the
mortgagors for the purpose of foreclosure. In such case, we are
of opinion that the courts have no right to seize this property,
deprive the mortgagee of his right of foreclosure given him by
his contract and entail upon the fund the cost of litigation and
a receivership, threatening to some extent the sufficiency of his
security, in the absence of any allegation or suggestion of insol-
vency or mismanagement or bad faith on the part of the mort-
gagee or any other recognized ground for equitable interference.
Jones on Chattel Mortgage, sec. 439, 452, 699; High on Receiv-
ers, sec. 647, 679. In the citation to Jones, sec. 439, it is said:
"The appointment of a receiver of mortgaged chattels, held by a
mortgagee in possession, will only be made in case of pressing
necessity in order to secure the rights of the mortgagor or those
claiming under him, to make appointment in any other case is to
impair the obligation of the contract between the parties to the
mortgage and is therefore beyond the constitutional power of the
Court. . . ."

The view we have taken of the case is not affected by the fact
that the mortgagors had broken into the store and resumed pos-
session of the property. This was done in their own wrong,
without the assent or knowledge of the mortgagee or his agent.
It was a tortious act and will not be allowed to avail or injuri-
ously affect the legal rights of the parties when they are brought
before the court for adjustment. Freeman on Executions, 2 vol.,
sec. 269 A; *McParland v. Read et al.,* 93 Mass., 231; *Deyo v.
Jamison et al.,* Mass., p. 410. In this last case *Dewey, Judge,*
delivering the opinion, said: "These cases declare the principle
that a valid and a lawful act cannot be accomplished by any
unlawful means and whenever such unlawful means are resorted

to, the law will interfere and restore the party injured thereby to his rights."  .

We think that the order for a receiver was improvidently granted and that the same must be set aside and the property included in the mortgage of defendant, appellant, shall be restored to him to be dealt with in accordance with law and the stipulations and requirements of the contract.          Reversed.